IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DSS A.S.,
Kloboucnicka 1735/35
140 00, Prague, Czech Republic,

    Plaintiff,

v.

PACEM DEFENSE LLC, d/b/a PACEM DEFENSE/ALS,
2941 Fairview Park Drive,
Suite 350
Falls Church, VA 22042,

    Defendant.

Civil No. 1:24-cv-1331

# COMPLAINT

Plaintiff DSS a.s. ("DSS"), by counsel, files this Complaint against Defendant PACEM Defense LLC, doing business as PACEM Defense/ALS ("PACEM"). DSS's claims arise from PACEM's breach of the Sale & Purchase of Goods Agreement No.: DSS23-004 between DSS and PACEM, dated December 18, 2023 ("Agreement"); PACEM's fraudulent inducement of the Agreement; PACEM's tortious interference with DSS's contractual arrangements and business expectancy; PACEM's unjust enrichment to the detriment of DSS; PACEM's failure to act in good faith; and PACEM's other wrongful conduct, as set forth below. DSS seeks damages and other relief arising from PACEM's unlawful conduct.

## INTRODUCTION

1.     In early 2022, Russia launched an invasion of Ukraine. Since that time, Ukraine

has defended itself against Russian aggression, and in doing so, has needed the assistance of—and has relied upon—weapons and ammunition provided by foreign entities, such as DSS.

2. DSS's Ukrainian customer (Ukrinmash) asked DSS to supply small arms to the Ukraine National Police that could be used to support the Ukrainian warfighting efforts.

3. In December 2023, DSS and PACEM (a Virginia-based manufacturer of munitions) executed the Agreement in which PACEM agreed to manufacture and export ▮ ▮ 40-millimeter grenades (the "Grenades").

4. PACEM received over $▮ million deposited for the manufacture and export of the Grenades.

5. The Agreement required PACEM to deliver all of the Grenades after approval of export.

6. On January 22, 2024, PACEM received the requisite export approval from the State Department License (the "DSP-5") to ship the Grenades ordered by DSS under the Agreement.

7. Since that time, DSS has asked PACEM multiple times for information about the Grenades, including whether all Grenades are fully manufactured, when the Grenades will be delivered, and an accounting for the deposit that PACEM retains.

8. Despite request, PACEM has failed to deliver ▮ Grenades required under the Agreement and refuses to provide information such as the status of the Grenades or an accounting of the funds paid.

9. While withholding information from DSS, in March 2024, PACEM inadvertently sent DSS a document demonstrating that PACEM had delivered a substantial quantity of the same grenades to another entity for a price higher than the price contracted for in PACEM's Agreement with DSS.

2

10. Thus, instead of delivering the ▮▮▮▮ Grenades to DSS as required by the Agreement, PACEM provided the same grenades to another entity for a higher profit.

11. PACEM's sole purported excuse for not delivering the Grenades to DSS is its contention that its license approved by the United State Department of State ("State Department") to export the Grenades is "impaired."

12. PACEM makes this contention that the DSP-5 is "impaired" in an effort to avoid the consequences of its breach of contract.

13. At no time between the date the DSP-5 was approved by the State Department (on or about January 22, 2024) and the expiration of that DSP-5 (on or about July 22, 2024) did the State Department terminate the DSP-5 and PACEM's authority to export the Grenades or otherwise declare the DSP-5 impaired or invalid.

14. Moreover, DSS asked PACEM to supply any authority for its contention that the DSP-5 was not valid, and PACEM supplied no authority.

15. By mid-February 2024, approximately one month after the State Department's approval of the DSP-5, PACEM had not exported any Grenades under the Agreement.

16. Knowing that it would be held in breach of the Agreement and knowing that it had no authority to claim that the DSP-5 was invalid, PACEM filed with the State Department a DSP-6 seeking to add another party to the DSP-5 (the "DSP-6") in bad faith in an effort to get the State Department to invalidate the DSP-5 (which the State Department never did).

17. The DSP-5 export license expired on July 22, 2024.

18. Although the State Department never invalidated the DSP-5 before it expired, PACEM never delivered ▮▮▮▮ Grenades as required by the Agreement,

19. As of the filing of this Complaint, PACEM still has not delivered ▮▮▮▮ Grenades

3

as required by the Agreement.

20. As of the filing of this Complaint, PACEM has not provided the basic information requested months ago by DSS such as the status of the Grenades and an accounting of the funds paid.

21. As a result of PACEM's breach and bad faith tortious conduct, DSS's Ukrainian customer terminated the purchase of the Grenades and demanded that DSS pay substantial penalties, causing DSS to suffer substantial harm. PACEM's unlawful acts have prevented DSS from providing the Grenades to its Ukrainian customer in desperate need of such arms to defend Ukraine against Russian aggression.

22. Accordingly, DSS files this Complaint against PACEM for: (a) damages caused by PACEM's breach of the Agreement, including but not limited to all penalties, fees, costs, and interest; (b) return of monies deposited with PACEM, plus interest from the date PACEM received the funds; (c) damages for PACEM's tortious interference with DSS's contract with Ukrinmash, as well as punitive damages; (d) all available remedies and damages for PACEM's unjust enrichment; (e) disgorgement of all profits PACEM received from sales of grenades that should have been delivered to DSS; and (f) an accounting of the more than $▮ million PACEM received, as well as an accounting of all profits PACEM received from sales of grenades that should have been delivered to DSS.

## PARTIES

23. Plaintiff DSS is a joint stock company under the laws of the Czech Republic with a registered office at Kloboucnicka 1735/35, 140 00, Prague, Czech Republic. DSS is in the business of procuring defense goods and services to assist, for example, the country of Ukraine as it defends its cities and towns from Russian invasion.

4

24. Defendant PACEM is a limited liability company organized and existing under the laws of Virginia, having a principal place of business at 2941 Fairview Park Drive, Suite 350, Falls Church, VA 22042. It has only one member, Pacem Defense Holdings, Inc., a Delaware corporation with its principal place of business in Virginia. PACEM is in the business of manufacturing, exporting, and coordinating the sale of munitions.

## JURISDICTION

25. This Court has personal jurisdiction over PACEM because PACEM is incorporated under the laws of Virginia and has a principal place of business in Virginia. In addition, PACEM's sole member has a principal place of business in Virginia.

26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

27. Venue is appropriate in this District under 28 U.S.C. § 1391(b) because PACEM resides in this District and a substantial part of the events or omissions giving rise to the claims alleged below occurred in this District.

## FACTUAL ALLEGATIONS

**A.  PACEM and DSS Enter into the Agreement, and PACEM Confirms the Deposit of more than $▮ million for Grenades.**

28. On December 18, 2023, DSS and PACEM entered into the Agreement, attached hereto as Exhibit 1.

29. At the time of the Agreement and thereafter, PACEM was aware that DSS had contracted to purchase the Grenades for ultimate delivery to a DSS customer in the Ukraine.

30. In the Agreement, PACEM agreed to deliver to DSS a total of ▮▮▮▮ Grenades "per the Delivery Schedule set forth in Exhibit C" to the Agreement. Exhibit 1, § 2.a.

5

31.     Delivery would commence upon State Department approval to export the Grenades via a State Department DSP-5 export license. Exhibit 1, § 2.c.

32.     Exhibit C to the Agreement provides the following delivery schedule that PACEM provided DSS ("Delivery Schedule"):

**EXHIBIT C: DELIVERY SCHEDULE (WITH PRODUCTION AND DEPOSIT SCHEDULE)**

| Shipment # | Quantity | Date Production Completes | Balance Payment Due Date | Balance Due | Date of Estimated US Departure |
|---|---|---|---|---|---|
| 1 | ▮ | Available from Stock | | ▮ | With Approved DSP-5 |
| 2 | ▮ | Available from Stock | | ▮ | |
| 3 | ▮ | Available from Stock | | ▮ | |
| 4 | ▮ | Available from Stock | | ▮ | |
| 5 | ▮ | 12/15/2023 | 12/20/2023 | ▮ | TBD |
| 6 | ▮ | 1/19/2024 | 1/24/2024 | ▮ | TBD |
| 7 | ▮ | 2/2/2024 | 2/7/2024 | ▮ | TBD |
| 8 | ▮ | 2/16/2024 | 2/21/2024 | ▮ | TBD |
| Total Quantity | ▮ | | | | |

Exhibit 1, at 17.

33.     Pursuant to a contract with its Ukrainian customer, after receiving the Grenades from PACEM, DSS would then ensure delivery of the Grenades to the customer.

34.     On December 14, 2023, PACEM acknowledged the receipt of:

a.  the "▮ deposit in accordance with the procedure described in" the Agreement; and

b.  "full payment (100%) for Shipment number ▮, containing ▮ rounds of [the Grenades]".

See Acknowledgement attached at Ex. 2.

35.     As set forth in this Delivery Schedule, PACEM represented to DSS that, as of the effective date of the Agreement on December 18, 2023, PACEM had ▮ Grenades "in stock" for immediate delivery to DSS upon an approved DSP-5.

6

Case 1:24-cv-01331-MSN-LRV   Document 1   Filed 07/31/24   Page 7 of 18 PageID# 97

36. In other words, after PACEM acknowledged by written receipt the initial ▇ deposit, PACEM represented that it had available Grenades.

37. As set forth in the Delivery Schedule, PACEM further represented to DSS that all ▇ Grenades would be complete by ▇. PACEM also provided serial numbers for the Grenades.

38. After PACEM confirmed receipt of the deposit on December 14, 2024, and after PACEM had made representations regarding the availability of the Grenades, PACEM executed the Agreement with the Delivery Schedule set forth in Ex. C to the Agreement.

39. On or about December 19, 2023, and in reliance on PACEM's representations regarding the availability of the Grenades, DSS was induced by PACEM to make an additional deposit of $▇ to ensure prompt delivery of the Grenades.

40. On January 9, 2024, in further reliance on PACEM's representations regarding the availability of the Grenades, DSS made another deposit of $▇, bringing the total amount deposited with PACEM to over $▇ million.

41. Upon receipt of the ▇ deposit, section 2(a) of the Agreement further states that DSS would ▇.

42. At no time did DSS receive ▇ from PACEM.

43. Either the Delivery Schedule set forth in Ex. C represents the firm Delivery Schedule, or PACEM failed to comply with the Agreement when it failed to supply ▇.

44. PACEM was aware when it accepted the funds deposited that timely delivery of the Grenades was critical to support DSS's Ukrainian customer in warfighting efforts.

7

**B.     The State Department Issues a Valid DSP-5 Export License for the Grenades, But PACEM Refuses to Ship the Grenades.**

45.     On or about January 22, 2024, the State Department approved the DSP-5 export license for the Grenades. The DSP-5 is attached hereto as Exhibit 3.

46.     As set forth in the Agreement, upon the issuance of an "approved DSP-5" (see Exhibit 1, at 17), PACEM was authorized to export the Grenades.

47.     As of the date of issuance of the DSP-5, no additional licenses or approvals were needed for PACEM to export the Grenades.

48.     Under the Agreement, upon issuance of the DSP-5, PACEM understood it was to commence delivery of the Grenades.

49.     However, after the issuance of the DSP-5, PACEM did not ship the ▮▮▮▮ Grenades required under the Agreement.

50.     As a result, DSS continued to seek information from PACEM regarding the status of the remaining Grenades.

**C.     PACEM Refuses to Inform DSS How Many Grenades Are Complete and Ready for Delivery, Refuses to Provide an Accounting of the Funds Received, and Unilaterally Seeks to Avoid Its Contract Requirements by Claiming that the DSP-5 Is Impaired.**

51.     Apparently unable to deliver Grenades as required by the Agreement and as authorized by the DSP-5, PACEM devised a plan to claim that the DSP-5 was invalid in an attempt to excuse PACEM from its breach of an obligation to deliver the Grenades under the Agreement.

52.     PACEM went so far as to file an improper DSP-6 with the State Department in an effort to get the State Department to invalidate the DSP-5. The improper DSP-6, dated February 23, 2024, is attached hereto as Exhibit 4.

53.     PACEM's efforts to invalidate the DSP-5 were unsuccessful, as the State Department did not invalidate the DSP-5 or otherwise declare it impaired or invalid.

54. In fact, the DSP-6 could not have had any bearing on the validity of the DSP-5, and therefore could not be used in any way by PACEM to escape its failure to delivering the Grenades under the Agreement.

55. Section 2(c) of the Agreement states in part: ███████████████████ ███████████████████████████████████████████████████ ████████████████ Section 2(c) does not state that PACEM can unilaterally excuse itself from liability if the U.S. Government issues and does not withdraw export approval.

56. At no time between the date the DSP-5 was approved by the State Department (on or about January 22, 2024) and the expiration of that DSP-5 (on or about July 22, 2024) did the State Department terminate or withdraw the DSP-5 and PACEM's authority to export the Grenades.

57. In other words, the Agreement did not permit PACEM to unilaterally decide to excuse itself from performance or liability when it failed to deliver the Grenades.

58. Rather than deliver the Grenades, PACEM allowed the DSP-5 to expire.

59. Having failed to deliver the Grenades during the pendency of a valid DSP-5, PACEM breached the Agreement.

**D.  DSS Receives Documentation Indicating That PACEM Delivered Grenades to Another Entity for a Higher Price.**

60. In or about March 2024, in response to a request for a copy of the DSP-5 for the Agreement, PACEM inadvertently emailed DSS a copy of a DSP-5 export license for another contract for the identical type of grenades.  Spetstechnoexport DSP-5 shows PACEM's delivery of a substantial quantity of the same grenades to an unrelated entity in Ukraine, Spetstechnoexport. The Spetstechnoexport DSP-5 is attached hereto as Exhibit 4.

9

61. That license also shows that PACEM received the export license necessary to export the grenades to Spetstechnoexport for a price higher than the price contracted for in PACEM's Agreement with DSS. *Id.*

62. When DSS informed PACEM that PACEM had sent the wrong DSP-5 license, PACEM provided the proper DSP-5 (*see* Ex. 3), but PACEM failed to ship the remaining Grenades to DSS.

63. When confronted by DSS that it appeared that PACEM had taken DSS's payments and used them to supply the more lucrative Spetstechnoexport, PACEM refused to explain the Spetstechnoexport contract. Instead, hiding behind its smokescreen, PACEM failed to provide information to DSS regarding the status of the Grenades or an accounting of the funds received.

64. Upon information and belief, PACEM provided the Grenades to Spetstechnoexport when presented with the potential for a higher profit. Upon information and belief, by engaging in this wartime profiteering, PACEM increased its profit by over $▓ million while not supplying the Grenades to DSS.

E.  **To this Day, PACEM Refuses to Provide DSS Information Regarding the Status of the Grenades or the Funds Paid by DSS.**

65. DSS contacted PACEM multiple times requesting information regarding the remaining Grenades' delay in shipment and a timetable indicating when those Grenades would be delivered.

66. The requested information included detail as to the dedicated components purportedly in PACEM's possession for the Grenades, when and how those dedicated components were delivered to PACEM, the status of the Grenades' builds, the costs incurred by PACEM to date for the Grenades, and an accounting of the funds sent to PACEM.

67. PACEM still refuses to provide any information regarding the status of the remaining Grenades or the funds.

**F. DSS Demands Inspection of Grenades, Which Confirms that PACEM Does Not Possess the ▮▮▮ Grenades as PACEM Misrepresented, and PACEM Refuses to Deliver the Small Number of Grenades that Are Available.**

68. After DSS's repeated efforts to seek an inspection of the Grenades that PACEM represented were available, and only after DSS was forced to engage counsel and make a legal demand, PACEM finally scheduled an inspection on April 25 (more than two months after the ▮▮▮ completion date for all ▮▮▮ Grenades as set forth in Ex. C).

69. Prior to the inspection, PACEM not only sought to unilaterally impose certain "pre-conditions" on DSS's inspection, but also PACEM still refused to provide basic information to DSS before DSS's inspector arrived at PACEM's facility, including the number of Grenades ready to inspect and ship and the serial and lot numbers.

70. DSS, a customer which had over $▮ million deposited at PACEM, also asked PACEM to provide PACEM's position on the purchase price attributable to the Grenades PACEM had manufactured and the remaining amount on deposit. PACEM, despite its fiduciary duties with respect to over $11 million on deposit, withheld the requested information.

71. At the inspection on April 25, 2024, DSS learned for the first time that PACEM only had ▮▮▮ Grenades available for inspection. This contradicted PACEM's prior communications stating that the Grenades required to be manufactured under the Agreement were available for inspection.

72. Thus, the inspection confirmed that PACEM did not have the Grenades referenced as "in stock" in Ex. C, as PACEM represented to DSS before execution of the Agreement, much less the rest of the Grenades (up to ▮▮▮) available for inspection according to the Delivery

Schedule timeline (███████████).

73.  At no time has PACEM permitted an inspection of ███ Grenades as represented were "in stock" as of December 18, 2023.

74.  At no time has PACEM permitted an inspection of the additional ███ Grenades that PACEM represented would be completed by ███████████.

75.  The few Grenades that PACEM presented to DSS for inspection did not include serial numbers previously represented to be Grenades under the DSS Agreement for which PACEM had acknowledged a full deposit.

76.  PACEM was not permitted to sell the DSS Grenades to a third party once the deposit had been made,[1] whether or not PACEM did so at a higher price to profiteer in a time of war.

G.  **PACEM Failed to Deliver All of the Grenades as Required by the Agreement.**

77.  PACEM did not comply with the "Delivery Schedule set forth in Exhibit C" to the Agreement.  Exhibit 1, § 2.a.  Specifically, it did not deliver the Grenades as set forth in Exhibit C after obtaining a valid DSP-5 export license.  *See* Exhibit 1, § 17.

78.  Indeed, as of the filing of this Complaint, PACEM has not delivered all of the contracted-for Grenades pursuant to the Agreement.

79.  As of the filing of this Complaint, PACEM has not provided information requested by DSS regarding the status of the remaining Grenades or what PACEM has done with the money it received.

80.  DSS is concerned that PACEM used all or a portion of the funds deposited for other purposes (e.g., the Spetstechnoexport grenades), particularly when PACEM refuses to confirm

---

[1] *See, e.g.*, Section 6(h) (once a deposit is received by the Seller, the Goods are ███████████).

what happened to the grenades with serial numbers previously set forth on packing labels provided for the Grenades to be delivered to DSS.

### H.    PACEM Tortiously Interfered with DSS's Contract with Its Ukrainian Customer by Failing to Deliver the Grenades Pursuant to the Agreement, and PACEM Has Been Unjustly Enriched.

81.     PACEM's bad faith actions, including its improper filing of a DSP-6 in the hopes it would somehow get the government to revoke the DSP-5, left DSS unable to provide the Grenades to its Ukrainian customer.

82.     To make matters worse, PACEM apparently shipped grenades otherwise designated for the DSS Agreement to another customer willing to pay more.  As a result, DSS has been unable to perform in accordance with its contract with its Ukrainian customer.

83.     Because DSS has been unable to provide the Grenades to its Ukrainian customer, the customer has sought repayment of the funds paid for the Grenades, as well as fines and other penalties under the contract.

84.     All the while, PACEM has retained over $▮ million it received for the Grenades without providing the Grenades it promised to provide in the Agreement.

85.     That is, PACEM has been unjustly enriched because it received money for the Grenades but did not provide them in return, instead generating a larger profit on sales of the same grenades to another customer.

### COUNT ONE
### Fraud in the Inducement

86.     DSS incorporates and realleges paragraphs 1–85 above by reference, as if fully set forth herein.

87. Prior to execution of the Agreement, PACEM represented to DSS that it had ▮▮▮ Grenades "in stock" and the remaining ▮▮▮ Grenades would be completed by ▮▮▮▮▮▮.

88. Prior to the execution of the Agreement, PACEM also represented the serial numbers of the Grenades that would be provided,

89. Also prior to the execution of the Agreement, PACEM represented that it would deliver and export the Grenades according to the Delivery Schedule if DSS agreed to submit a further deposit of $▮▮▮▮▮ to PACEM.

90. These representations were material to DSS's decision to enter into the Agreement and to submitting the additional $▮▮▮▮▮ deposit.

91. This deposit was acknowledged by PACEM in a written document prior to the execution of the Agreement between DSS and PACEM.

92. In reliance on PACEM's representations, DSS executed the Agreement with the expectation that PACEM could perform and had an intention to perform.

93. PACEM either misrepresented the availability of the Grenades (with the serial numbers or otherwise) or misrepresented its intent to perform, thereby inducing DSS to deposit funds and sign a contract in reliance on PACEM's misrepresentations and/or omissions of material fact, causing damages to DSS for which DSS is entitled to seek rescission and damages.

94. As a result of PACEM's fraud, DSS has suffered and continues to suffer significant harm.

## COUNT TWO
### Breach of Contract (Virginia Common Law)

95. DSS incorporates and realleges paragraphs 1–85 above by reference, as if fully set forth herein.

96. The Agreement is a valid and enforceable contract between DSS and PACEM.

97. Pursuant to the Agreement, PACEM was required to deliver the Grenades to DSS "per the Delivery Schedule set forth in Exhibit C" to the Agreement. Exhibit 1, at 2.

98. Either the Delivery Schedule set forth in Ex. C represents the ▮▮▮▮▮, or PACEM failed to comply with the Agreement when it failed to supply a ▮▮▮▮▮ upon receipt of the deposit.

99. In either event, PACEM breached the Agreement, particularly when it allowed the DSP-5 to expire six months after it was issued and without completing delivery of the Grenades.

100. DSS has at all times fulfilled its obligations under the Agreement, and PACEM has received over $▮ million for the Grenades.

101. PACEM breached the Agreement by failing to deliver all of the Grenades to DSS, as required by the Agreement's Delivery Schedule, and indeed failing to deliver all of the Grenades to DSS at any time prior to the filing of this Complaint.

102. As a proximate result of PACEM's breach of the Agreement, DSS has suffered damages in an amount to be determined at trial.

## COUNT THREE
### Accounting (Virginia Common Law)

103. DSS incorporates and realleges paragraphs 1–85 above by reference, as if fully set forth herein.

104. Despite request, PACEM has not disclosed the status of the funds it received as a deposit for the Grenades.

105. Pursuant to Virginia common law, DSS is entitled to an accounting, requiring PACEM to demonstrate, at a minimum, how the funds were used and maintained.

106. DSS thus demands an accounting to be performed for the funds received by PACEM, and for such accounting, an order that PACEM cooperate fully with the accounting and provide all operations and financial records requested by an accountant/CPA selected by DSS at PACEM's cost and expense.

## COUNT FOUR
### Tortious Interference (Virginia Common Law)

107. DSS incorporates and realleges paragraphs 1–85 above by reference, as if fully set forth herein.

108. DSS signed a valid contract with its Ukrainian customer for the delivery of grenades to support the Ukrainian warfighting efforts.

109. DSS also had an expected future business relationship with its Ukrainian customer.

110. PACEM knew about DSS's contract and relationship with its Ukrainian customer since at least December 18, 2023, when PACEM and DSS entered into the Agreement.

111. In fact, after PACEM improperly contacted DSS's customer directly, DSS was forced to send a cease-and-desist letter to PACEM to stop tortiously interfering with DSS's customer.

112. Despite knowledge of DSS's customer relationship and the Ukraine's desperate need for arms to defend itself against Russian invasion, PACEM intentionally interfered with DSS's contract and expected future relationship with its Ukrainian customer by engaging in the misconduct described above including the filing a DSP-6 in bad faith and using the filing as an excuse not to deliver all of the Grenades, which PACEM had sold to another entity for a higher price.

113. PACEM's failure to deliver the Grenades results in DSS being unable to perform under its contract with its Ukrainian customer and interference with its future business relationship.

114. As a proximate result of PACEM's tortious interference with DSS's contract and future business relationship with its Ukrainian customer through these improper means, DSS has suffered damages in an amount to be determined at trial.

## COUNT FIVE

### Unjust Enrichment (Virginia Common Law)

115. DSS incorporates and realleges paragraphs 1–85 above by reference, as if fully set forth herein.

116. DSS conferred benefits upon PACEM when DSS funds were used by PACEM to manufacture goods never delivered to DSS and/or delivered to a third party for profit and PACEM failed to return funds to DSS with interest and/or the profits obtained by PACEM from third party sales of goods.

117. PACEM knew that DSS had conferred these benefits upon PACEM.

118. PACEM accepted and has retained these benefits.

119. It is inequitable for PACEM to retain the benefits it received.

120. PACEM has thus been unjustly enriched at DSS's expense.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the foregoing, Plaintiff prays for the following relief:

A. Recovery of monetary damages from Defendant to Plaintiff as established at trial;

B. Rescission and return of monies deposited with PACEM, plus interest from the date PACEM received the funds, and/or items of value purchased with the funds;

C. Disgorgement of all profits PACEM received from sales of grenades that should have been delivered to DSS, plus interest;

D. An award of punitive damages to the extent permitted by law;

E. An order requiring, within ten (10) after the order, an accounting to be performed as to the funds sent to Defendant, that Defendant cooperate fully with the Accounting, and that Defendant provide all operations and financial records requested by an accountant/CPA selected at Plaintiff's sole discretion and at Defendant's cost and expense within 30 days of invoice by such accountant/CPA;

F. An award of reasonable attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest to the extent permitted by law or contract; and

G. Such other and further relief as the Court deems just and proper.

Dated: July 31, 2024        By:   /s/ Attison L. Barnes, III
                                  Attison L. Barnes, III (VSB No. 30458)
                                  Stephen J. Obermeier (VSB No. 89849)
                                  Wiley Rein LLP
                                  2050 M Street NW
                                  Washington, DC 20036
                                  Tel: (202) 719-7000
                                  abarnes@wiley.law
                                  sobermeier@wiley.law

                                  *Counsel for Plaintiff DSS, a.s.*