**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| DSS a.s.,<br><br>            Plaintiff,<br><br>v.<br><br>Pacem DEFENSE LLC,<br><br>            Defendant. | Civil No. 1:24-cv-01331-MSN-LRV |

**DEFENDANT PACEM DEFENSE LLC'S**
**MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.   The Parties .......................................................................................... 3

    B.   The Original Pacem-BBM-DSS Deal Leading To The Acknowledgment .................... 3

    C.   The Replacement Agreement .................................................................. 4

    D.   The Complaint ...................................................................................... 7

LEGAL STANDARD ................................................................................................ 8

ARGUMENT ............................................................................................................ 9

I.    The Complaint Fails To Plausibly Allege A Claim For Fraud In The Inducement............. 9

    A.   DSS fails to plead fraud in the inducement with particularity. ...................... 10

    B.   DSS fails to plausibly allege a false representation of material fact.............................11

    C.   DSS's fraud claim is also barred by Virginia's source of duty rule and the economic loss rule. ...................................................................................................... 14

II.    DSS Fails To Plausibly Allege A Claim For An Accounting. ........................................ 18

III.    DSS Fails To Plausibly Allege Tortious Interference. ....................................... 19

CONCLUSION........................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*4D-Enterprises, LLC v. Aalto Hyperbaric Oxygen, Inc.*,
   No. 1:19-cv-01504, 2020 WL 13200228 (E.D. Va. July 10, 2020) ......................................... 19

*4D-Enterprises, LLC v. Aalto Hyperbaric Oxygen, Inc.*,
   No. 1:19-cv- 01504, 2020 WL 13200492 (E.D. Va. May 22, 2020)........................... 13, 16, 17

*Aggarwal v. Sikka*,
   No. 1:12-cv-00060, 2012 WL 12870349 (E.D. Va. June 12, 2012).........................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................... 9, 12, 18, 20

*Augusta Mut. Ins. Co. v. Mason*,
   645 S.E.2d 290 (Va. 2007)......................................................................................... 19

*Bloch v. Homesite Ins. Co.*,
   No. 1:14-cv-01208, 2015 WL 13854990 (E.D. Va. July 17, 2015) .......................................11

*Bo v. Ruitang*,
   No. 1:23-cv-00079, 2023 WL 5615994 (E.D. Va. Aug. 30, 2023) .................................... *passim*

*Chaves v. Johnson*,
   335 S.E.2d 97 (Va. 1985)......................................................................................... 20

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*,
   249 F.3d 204 (4th Cir. 2001)................................................................................ 20, 21

*Cyberlock Consulting, Inc. v. Info. Experts, Inc.*,
   876 F. Supp. 2d 672 (E.D. Va. 2012) ....................................................................... 12

*Duggin v. Adams*,
   360 S.E.2d 832 (Va. 1987)......................................................................................... 21

*Dunn Const. Co. v. Cloney*,
   682 S.E.2d 943 (Va. 2009).................................................................................... 15, 18

*Filak v. George*,
   594 S.E.2d 610 (Va. 2004).................................................................................... 15, 16

*ITility, LLC v. Staffing Res. Grp., Inc.*,
   No. 1:20-cv-00004, 2020 WL 6701361 (E.D. Va. Nov. 13, 2020) ......................................... 15

*Landfall Tr. LLC v. Fid. Nat'l Title Ins. Co.*,
   647 F. Supp. 3d 464 (E.D. Va. 2022) ................................................................... 16, 18

*Lissmann v. Hartford Fire Ins. Co.*,
 848 F.2d 50 (4th Cir. 1988) ................................................................................. 12

*Masco Contractor Servs. E., Inc. v. Beals*,
 279 F. Supp. 2d 699 (E.D. Va. 2003) ................................................................... 22

*Maximus, Inc. v. Lockheed Info. Sys., Inc.*,
 493 S.E.2d 375 (Va. 1997) .................................................................................... 21

*Philips v. Pitt Cnty. Mem'l Hosp.*,
 572 F.3d 176 (4th Cir. 2009) .................................................................................. 9

*Precision Franchising LLC v. Pate*,
 No. 1:07-cv-00407, 2007 WL 3231551 (E.D. Va. Oct. 31, 2007) ......................... 21

*Pullen Farm, LLC v. Seedway, LLC*,
 No. 3:23-cv-00032, 2024 WL 1252374 (W.D. Va. Mar. 22, 2024).......................... 14

*Rattner v. Chubb Nat'l Ins. Co.*,
 No. 1:17-cv-00136, 2017 WL 11500149 (E.D. Va. 2017) ......................................... 9

*Reese v. Shanahan*,
 No. 5:13-CT-03126, 2015 WL 11070514 (E.D.N.C. Jan. 14, 2015) ......................... 9

*Richmond Metro. Auth. v. McDevitt St. Bovis*,
 507 S.E.2d 344 (Va. 1998) ............................................................................ 15, 17, 18

*Schmidt v. Synchrony Bank*,
 No. 22-cv-00344, 2022 WL 18635838 (E.D. Va. June 14, 2022)........................... 14

*Selective Ins. Co. of the Southeast. v. Williamsburg Christian Acad.*,
 458 F. Supp. 3d 409 (E.D. Va. 2020) .............................................................. 15, 16

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*,
 374 S.E.2d 55 (Va. 1988) ...................................................................................... 15

*Sheffer v. Healthcare Servs. Grp., Inc.*,
 No. 7:19-cv-00053, 2019 WL 5295531 (W.D. Va. Oct. 18, 2019) ............................ 11, 13, 21

*Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*,
 698 F. Supp. 2d 602 (E.D. Va. 2010) .................................................................... 18

*Skillstorm, Inc. v. Elec. Data Sys., LLC*,
 666 F. Supp. 2d 610 (E.D. Va. 2009) .................................................................... 22

*Station #2, LLC v. Lynch*,
 695 S.E.2d 537 (Va. 2010) .................................................................................... 13

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ............................................................................ 10

*Vicente v. Obenauer*,
    736 F. Supp. 679 (E.D. Va. 1990) ..................................................................... 19

*Vienna Metro LLC v. Pulte Home Corp.*,
    786 F. Supp. 2d 1076 (E.D. Va. 2011) ............................................................... 22

*Wahi v. Charleston Area Med. Ctr., Inc.*,
    562 F.3d 599 (4th Cir. 2009) ............................................................................... 9

*Zaklit v. Glob. Linguist Sols., LLC*,
    No. 1:14-cv-00314 , 2014 WL 3109804 (E.D. Va. July 8, 2014) ..................... 12, 13

**Rules**

Fed. R. Civ. P. 10(c) .............................................................................................. 9

Fed. R. Civ. P. 9(b) ............................................................................................10, 11

**INTRODUCTION**

Plaintiff DSS a.s. of Prague, Czech Republic ("DSS") has distorted this garden-variety contract dispute into a facially defective tort case. Defendant Pacem Defense LLC of Falls Church, Virginia ("Pacem") agreed to manufacture 40-millimeter M430A1 HEDP HV grenades for shipping overseas to DSS, ultimately for use by the Ukrainian National Police. These goods require specific regulatory approval from the U.S. State Department before they can be exported. Although Pacem received export "approval," Pacem was unaware, at the time of its application, that DSS (contrary to its own promises) had insinuated non-party Battle Born Munitions of Reno, Nevada ("BBM") into the transaction. BBM was, and to the best of Pacem's knowledge and belief remains, under federal investigation stemming from BBM's falsification of its own application to export a prior shipment of Pacem-manufactured grenades to DSS. Although the Complaint strategically omits any mention of BBM, this background is incorporated into and integral to the Complaint.[1]

The Agreement at issue is a replacement agreement between Pacem and DSS to complete the deal *without* BBM. Pacem insisted, and DSS promised, that BBM would not be involved in this Agreement given that the first shipment of goods from Pacem to BBM was seized by federal authorities because BBM had falsified its export license application. With the Agreement signed, Pacem applied for export approval from the State Department, in lieu of BBM. The State Department understandably asked Pacem whether BBM was involved in the replacement Pacem-DSS deal. Based on DSS's promises, Pacem assured the State Department that BBM was *not* involved and received approval. Yet DSS, against its word, insinuated BBM anyway as "DSS partners." When Pacem learned of BBM's participation, Pacem updated its application with the

---

[1] This background is incorporated into the Complaint based on Paragraph 34, which references an "attached" Acknowledgement that DSS did not attach, which is attached here as *Exhibit A*, and the full version of Exhibit 3 to the Complaint, attached here for completeness as *Exhibit B*.

1

State Department to disclose BBM's apparent involvement. Pacem then attempted to carefully navigate the regulatory uncertainty that DSS itself created, but was not able to receive clarity about whether it could lawfully ship highly explosive, highly regulated goods to DSS in these circumstances. Pacem and DSS, without BBM, could – right now – apply for a new license, and this deal could still be completed. Indeed, Pacem has effectively and repeatedly offered this to DSS.

Instead, DSS has chosen to litigate. But rather than bring a simple breach of contract claim, DSS has blown this dispute far out of proportion by levelling accusations of "war profiteering" – accusations that are as offensive as they are unsupported – in service of obviously defective tort claims. Ultimately, this is a dispute about whether Pacem was "too careful" about receiving clear, unclouded approval from U.S. regulators before shipping explosive ordnance to a foreign customer. Pacem remains committed to doing everything it can to ensure U.S. law is carefully followed, and that its reputation with U.S. regulators, critical to Pacem's business, is untarnished, especially after the prior experience with BBM.

Pacem does not move to dismiss DSS's breach of contract claim or the unjust enrichment claim pleaded in the alternative. Pacem looks forward to vindicating its conduct regarding those claims through discovery. But the fraud, accounting, and tortious interference claims – Counts 1, 3, and 4 – should be dismissed for failure to state a claim under Rule 12(b)(6).

*First*, DSS's fraud claim should be dismissed for three independent reasons: (1) DSS has not pleaded fraud with particularity, (2) DSS fails to allege a false representation, (3) and DSS's claim violates Virginia's source of duty and economic loss rules. *Second*, DSS's claim for an equitable accounting should be dismissed because DSS has not plausibly alleged that Pacem is a fiduciary. *Third*, DSS's tortious interference claim fails because DSS has not plausibly alleged that

Pacem interfered with any of DSS's contractual counterparties, resulting in a breach by the counterparty, or identifying any "improper methods" to interfere with a specific business expectancy. The shortcomings in these allegations are so pervasive that they cannot be cured, and these claims should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    The Parties

Pacem is a Virginia-headquartered company in the business of manufacturing, exporting and coordinating the sale of defense products. Compl. ¶ 24. Its CEO, Andrew Knaggs, is a West Point graduate and decorated combat veteran with multiple deployments in direct support of the Global War on Terror, who received the Bronze Star Medal for combat actions while serving as a U.S. Army Special Forces officer in command of a team of Green Berets.[2] Among Pacem's products are 40-millimeter M430A1 HV HEDP grenades. Compl., Ex. 1 at internal Ex. A.

DSS is a Czech company in the business of procuring and importing defense goods. Compl. ¶ 23. One of DSS's customers, Ukrinmash, asked DSS to supply small arms to the Ukrainian National Police to support the Ukrainian warfighting efforts. *Id.* at ¶ 2. In December 2023, Pacem agreed to sell and ship that type of grenade to DSS for ultimate delivery to the Ukrainian National Police. *Id.* at ¶ 3; *id.* at Ex. 1. ("Agreement").

### B.    The Original Pacem-BBM-DSS Deal Leading To The Acknowledgment

The Agreement has a relevant history reflected in Paragraph 34 and Exhibit 3 to the Complaint. As Exhibit 3 states, "BBM was involved earlier under its own contract with the same foreign consignee, DSS." Compl., Ex. 3 (DSP-6) at 2, ¶ 20.B. Pacem previously contracted with U.S.-based intermediary BBM to provide the same quantity of products as contemplated by the

---

[2] Pacem Solutions International, Who We Are, ELT, https://www.pacem-solutions.com/elt.

Agreement. *Id.* Pacem was to deliver the grenades to BBM, who would act as an exporter and deliver the grenades to DSS. *Id.* Under that prior agreement, BBM wired to Pacem a 50% deposit for the entire allotment of grenades and paid the full amount for the entire first shipment. These are the payments in Paragraph 34 and in the Acknowledgment. Compl. ¶ 34; Ex. A. In other words, BBM – ***not*** DSS – wired to Pacem a large portion of the money at issue.

The BBM-to-DSS export arrangement did not last long. BBM was contractually obligated to secure the appropriate regulatory approval from the U.S. Department of State. BBM represented that it received the necessary approval, and Pacem initiated the first shipment. But after the grenades left Pacem's custody, on October 11, 2023, the U.S. Customs and Border Protection ("CBP") seized them in North Carolina, prior to export. According to the notice of seizure, BBM had, in fact, failed to obtain the required regulatory approval and submitted false statements or material omissions in its application. BBM acknowledged its errors, in a submission to CBP, and has taken the position that one of their employees created and submitted numerous fraudulent documents and correspondence. At this point, Pacem obviously could not proceed with the Pacem-BBM-DSS deal as originally envisioned.

### C.      The Replacement Agreement

Despite the October 2023 seizure, Pacem remained willing to sell grenades to the Ukraine National Police, as originally intended. Pacem and DSS executed an Agreement, effective December 18, 2023, as a replacement contract for the Pacem-BBM contract. Under the Agreement, Pacem agreed to manufacture, sell, ***and export*** the same quantity of grenades from the BBM Agreement to DSS, who would then furnish the munitions to the Ukraine National Police. Compl. ¶ 28; *see also id.* at Ex. 1. To avoid the issues raised by BBM's prior conduct, Pacem agreed to use its deep experience in these regulatory matters to "obtain an Export License" from the Department of State – which, relevant here, is a DSP-5. Compl., Ex. 2; *see* Compl., Ex. 1 at §§ 1(c)-(d), 2(c).

Pacem received certain payments. On December 14, 2023, a few days before DSS executed the agreement on December 18, 2023, the parties executed a letter agreement stating that Pacem "received the initial 50% deposit … Additionally, the Parties acknowledge that PACEM Defense has received full payment (100%) for shipment number 1 of 8." Compl. ¶ 34, citing incorrectly "Acknowledgment attached at Ex. 2"; that Acknowledgment was not attached to the Complaint, and is attached hereto as Ex. A. On or about December 19, 2023, DSS wired Pacem the amount owed for the second, third, and fourth shipments. Compl. ¶ 39. On January 9, 2024, DSS wired to Pacem the amount owed for the fifth shipment. *Id.* at ¶ 40.

Pacem attempted to secure regulatory approval. On January 2, 2024, Pacem applied for a Permanent Export License, or DSP-5, with the State Department seeking authorization to ship the contracted munitions to DSS as foreign intermediate consignee and identifying the Ukraine National Police as the "foreign end-user." Compl., Ex. 2. On January 22, 2024, Pacem's DSP-5 was approved. Compl. ¶ 6; *see also id.* at Ex. 2. Pacem was, however, compelled to notify the State Department after learning that DSS had breached its promise not to involve BBM in the Pacem-DSS deal. *See infra* pp. 6–7. On February 23, 2024, after DSS demanded that Pacem withdraw the DSP-5 and submit a new one, Pacem submitted a DSP-6, an amendment to its DSP-5 application. Compl., Ex. 3; *id.* at ¶ 52.

DSS alleges that Pacem's filing its DSP-6 amendment was "improper," (Compl. ¶ 52) but does not quote this explanation from the DSP-6:

> This DSP-6 is being submitted out of an abundance of caution because when Pacem Defense submitted its DSP-5 application on January 2, 2024, ***it had been assured that Battle Born Munitions (BBM) was not involved***. BBM was involved earlier under its own contract with the same foreign consignee, DSS. ***After the DSP-5 was approved, new information suggested BBM involvement***, so we reported it to DDTC. See attached

Supplement. Our best understanding now is that BBM will serve as an advisor to DSS.

Compl. Ex. 3, at 2 § 20. B (emphasis added and throughout unless otherwise indicated).

The DSP-6 references a "Supplement" that further explains the summary from the DSP-6 quoted above. For completeness, the complete DSP-6 submission, including that supplement, is attached here as **Exhibit B**. The supplement includes a February 7, 2024, email from Pacem's Chief Legal Officer[3] to the U.S. State Department, stating:

> ***Before we applied for this license on January 2, 2024, we insisted to DSS that Battle Born Munitions ("BBM")***, which had been an earlier contractual partner with DSS, ***not be involved in any way***. ***DSS agreed to this condition***, so when we applied on January 2, 2024, we did not mention BBM in our DSP-5 application. I also understand that my Pacem colleague Brian Crouch subsequently assured you in a phone call that BBM was not involved.

> Late last week, ***we received new information suggesting that BBM might have been involved, contrary to our condition for doing business with DSS***. Specifically, a text from our DSS point of contact stated, in connection with an upcoming phone call: "As for BBM I insist to have them on call as they are DSS partners and are assisting with this project."

> As soon as we learned of this possible involvement of BBM, we promptly insisted that DSS assure us in writing that BBM is not involved. DSS sent us a letter on February 5, 2024, stating that BBM "is no longer associated in any way with this transaction." The next day, the Czech Ministry of Defense stated in a letter that, "BBM is no longer part of this project." While both of these letters are reassuring going forward, ***they both leave open the appearance that BBM was involved***, contrary to our implicit and explicit representation to you that BBM was not involved.

> Given the steps we have already take[n], it is unclear whether or not we have any further obligations to act on this new information, ***so we want to***

---

[3] Pacem's Chief Legal Officer is the former Senate-confirmed Inspector General of the Department of Defense. *See* Pacem Solutions International, Who We Are, ELT, https://www.pacem-solutions.com/elt.

> ***make sure that we have satisfied any need we have to inform the appropriate U.S. Government officials of this new information***. As I have never dealt with this type of situation before, I would appreciate your procedural guidance.

Ex. B (emphasis added). Pacem's DSP-6 was not approved by the Department of State. Given this regulatory uncertainty, Pacem did not ship highly regulated grenades to DSS. Compl. ¶ 78. The original DSP-5 has since expired. *Id.* at ¶ 78.

### D.     The Complaint

DSS filed the Complaint on July 31, 2024, and served it on August 15, 2024. The Complaint contains five separate claims under Virginia law: (1) fraud; (2) breach of contract; (3) equitable accounting; (4) tortious interference; and (5) unjust enrichment. Compl. ¶¶ 86-120. In essence, DSS alleges that it has a valid contract with Pacem for delivery of a certain amount grenades, that it has paid for a portion of those grenades, that it has not received delivery of any grenades, and that Pacem had the regulatory approval to deliver the grenades (until Pacem's DSP-5 expired). *Id.* ¶¶ 28-40, 45, 49, 59. DSS also alleges an unjust enrichment claim in the alternative. *Id.* at ¶¶ 115-120.

Not content with straightforward breach of contract allegations, DSS brings three extra-contractual claims. ***First***, DSS alleges that Pacem induced DSS to enter the Agreement because Pacem represented – in the Agreement – that Pacem intended to deliver grenades pursuant to the Agreement, Compl. ¶¶ 35, 37, 87, 89, 93, and supplied serial numbers for certain grenades, *id.* at ¶ 37. DSS alleges that Pacem *allegedly* never intended to supply grenades – because Pacem never supplied grenades. *Id.* at ¶ 93. ***Second***, DSS also alleges that it is entitled to an accounting because Pacem, DSS's contractual counterparty, is its "fiduciary," although the Complaint does not describe any facts giving rise to that legal conclusion. *Id.* at ¶¶ 70, 105. ***Finally***, DSS alleges that Pacem tortiously interfered with DSS's downstream relationship with DSS's customer because

Pacem "improperly contacted" the customer and used "improper methods," although the Complaint fails to describe the "contact," the "methods, " the breach of contract by the customer, or the lost business expectancy. *Id.* at ¶¶ 111, 114.

With unsupported rhetorical flourish, DSS also alleges "[u]pon information and belief" that the grenades were delivered to a different Pacem customer, in an act of "wartime profiteering." Compl. ¶¶ 64, 76. The basis for this allegation is another DSP-5 dated more than one month **before** Pacem and DSS executed the Agreement. *Id.* at ¶ 60; id. at Ex. 4, at 2 § 1 (date prepared). DSS nonetheless baselessly alleges that providing grenades pursuant to a (1) pre-existing arrangement with (2) a different customer, "slowed the supply of prevented DSS from providing the Grenades to its Ukrainian customer in desperate need of such arms to defend Ukraine against Russian aggression." *Id.* at ¶ 21. This claim is belied by Plaintiff's own Complaint, which indicates at Exhibit 4 that the pre-existing Pacem customer was delivering those grenades **to "Ministry of Defence of Ukraine Armed Forces.**" *Id.* at ¶ 60; *id.*, Ex. 4 at 2 § 14 ("Foreign End-User"). DSS's allegation of "war profiteering" is particularly galling given that DSS has apparently insinuated itself as an intermediate broker that neither manufactures this crucial equipment nor deploys it, yet seeks to profit when in reality DSS's own conduct has prevented the delivery of grenades to DSS's Ukrainian customer.

Pacem now moves to dismiss the fraud, equitable accounting, and tortious interference claims under Rule 12(b)(6).

## LEGAL STANDARD

Under the familiar Rule 12(b)(6) standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Plausibility means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although

the Court must, at this stage, accept factual allegations as true, "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The Court can therefore disregard "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement." *Id.*, 556 U.S. at 678 (cleaned up). Further, the Court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (cleaned up). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts." *Reese v. Shanahan*, No. 5:13-CT-3126-BO, 2015 WL 11070514, at *1 (E.D.N.C. Jan. 14, 2015) (internal quotation marks and citation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), "a court may consider the facts alleged on the face of the complaint, documents incorporated into the complaint by reference, and those matters properly subject to judicial notice." *Rattner v. Chubb Nat'l Ins. Co.*, No. 1:17-cv-00136, 2017 WL 11500149, at *2 (E.D. Va. 2017) (internal quotation marks and citation omitted). The Court "may also consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## ARGUMENT

### I. The Complaint Fails To Plausibly Allege A Claim For Fraud In The Inducement (Count 1).

DSS has attempted to dress up a breach of contract claim as a fraud claim and failed completely, for three independent reasons: (1) DSS fails to plead fraud with particularity under Rule 9(b); (2) DSS fails to plausibly allege a false statement as required by Virginia law; and (3) DSS's fraud claim is barred by Virginia's source of duty and economic loss rules.

### A.   DSS fails to plead fraud in the inducement with particularity.

The elements of fraud in the inducement are: (i) a false representation of a material fact; (ii) reliance; and (iii) inducement to enter the contract. *Bo v. Ruitang*, No. 1:23-cv-00079, 2023 WL 5615994, at *4 (E.D. Va. Aug. 30, 2023). Federal Rule of Civil Procedure 9(b) requires that fraud claims, like this one, satisfy a heightened particularly standard. "Rule 9(b) requires naming the time, place, and contents of the false misrepresentations, as well as the identity of the person making the misrepresentation and what he obtained thereby, facts often referred to as the who, what, when, where, and how of the alleged fraud." *Bo*, 2023 WL 5615994, at *4 (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)) (cleaned up).

The Complaint's fraud-related allegations are threadbare ***at best***: One, Pacem allegedly misrepresented in the contract that a certain amount of grenades were in stock and ready to ship upon approval of a DSP-5. Compl. ¶ 35; Two, Pacem allegedly misrepresented in the contract that all the grenades would be complete by February 16, 2024. *Id.* at ¶ 37; and Three, Pacem allegedly sent DSS serial numbers for "the Grenades" to be provided under the contract. *Id.* at ¶¶ 37, 88. That is the alleged inducement: "After Pacem … made representations regarding the availability of the Grenades, Pacem [*sic*] executed the Agreement …." *Id.* at ¶ 38.

DSS falls well short of satisfying the particularity standard. ***Who***: DSS does not identify the person who made the statements at issue; instead, the Complaint alleges that "Pacem" made certain statements. ***What***: other than terms in the contract, which are not actionable as fraud, DSS does not identify any particular statement about the availability of grenades, describe what was said, or explain why the statement was false. ***When***: DSS does not identify when that unidentified person made the unidentified misstatements about the availability of grenades. ***Where***: Nor does DSS identify the place or manner of the alleged misstatement about the availability of grenades.

*How*: the Complaint does not describe how DSS relied on the alleged current availability of grenades – as opposed to grenades to be manufactured under the agreement. Any one such failure dooms Plaintiff's fraud claim; the Complaint contains **none** of these necessary allegations. *See Bo*, 2023 WL 5615994, at \*4-\*5 (dismissing a fraudulent inducement claim under Rule 9(b)). And dismissal of this fraudulent inducement claim is well-supported by extensive caselaw from this Court and courts in this Circuit.[4]

The Court need go no further to dismiss DSS's thinly pleaded fraud in the inducement claim.

**B.      DSS fails to plausibly allege a false representation of material fact.**

Setting aside the lack of particularity, the "statements" DSS has attempted to plead fail to include a statement that was false when made. Virginia law "distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract." *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988). "The reason is obvious. Without that rule almost every breach of contract could be claimed to be a fraud." *Id.* That is precisely DSS's goal – to turn this breach of contract case into a fraud case.

***First***, DSS alleges, without any factual adornment, that Pacem misrepresented its intent to perform on the contract. Compl. ¶ 93. This "naked assertion devoid of further factual

---

[4] *See, e.g.*, *Sheffer v. Healthcare Servs. Grp., Inc.*, No. 7:19-cv-00053, 2019 WL 5295531, at \*4 (W.D. Va. Oct. 18, 2019) (dismissing a fraudulent inducement claim under 9(b) that alleged "'[defendant]' made false representations regarding a two percent commission rate 'on many occasions,' including the 'time of contracting'"); *Bloch v. Homesite Ins. Co.*, No. 1:14-cv-01208, 2015 WL 13854990, at \*4 (E.D. Va. July 17, 2015) (dismissing under Rule 9(b) a fraudulent inducement claim alleging that AIG, the insurer, made false representations, without specifying the person); *Aggarwal v. Sikka*, No. 1:12-cv-00060, 2012 WL 12870349, at \*2 (E.D. Va. June 12, 2012) (dismissing fraudulent inducement claim under 9(b) where alleged misrepresentations were not alleged with sufficient particularity).

enhancement" does not receive a presumption of truth, even at this motion-to-dismiss stage. *See Iqbal*, 556 U.S. at 678. In essence, DSS has alleged that Pacem did not intend to perform because Pacem ultimately failed to perform. Pacem contests any allegation that it failed to perform, but regardless – as numerous cases hold – alleging a breach of contract does not plausibly allege a pre-existing intent, before the contract was signed, to breach that contract.

Three cases, among many, highlight why DSS's misstatement allegations fail. In *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 876 F. Supp. 2d 672, 681 (E.D. Va. 2012), this Court dismissed a fraud claim alleging that a defendant did not intend to perform at the time it signed a contract. Even though the plaintiff argued that additional allegations in the complaint supported the allegation of no intent, the court reasoned that the "the factual allegations which [plaintiff] cites are, in essence, that [defendant] failed to perform at the time the contract was formed." *Id.* The Court went on to explain that "mere failure to perform is generally not evidence of a lack of intent to perform at the time the contract was formed." *Id.*

*Zaklit v. Glob. Linguist Sols., LLC*, No. 1:14-cv-00314, 2014 WL 3109804, at *19 (E.D. Va. July 8, 2014), echoes *Cyberlock Consulting*. There, this Court explained that "the mere failure to perform is generally not evidence of a lack of intent to perform at the time the promise was made." *Id*. This Court then dismissed a fraudulent inducement claim because plaintiff "asserted no facts tending to show that [defendant] had no intention of fulfilling [its] obligations." *Id.*

A similar result occurred in *4D-Enterprises, LLC v. Aalto Hyperbaric Oxygen, Inc.*, No. 119-cv-01504, 2020 WL 13200492 (E.D. Va. May 22, 2020). There, the plaintiff alleged that the defendant "made certain material representations … regarding the nature of the services that [defendant] would provide," that they "were false when made," and were made "for [plaintiffs] to rely upon the same." *Id.* at *3. This Court held that "these allegations are insufficient to state a

fraud-based claim." *Id.*; *see also Sheffer*, 2019 WL 5295531, at *3 ("[I]t is not enough to simply assert that [defendant] 'knew' at the time the plaintiff signed the employment agreement 'that it had no intention of paying [him] the 2 percent gross commission over the course of the entire contractual period.'") (third alteration in original); *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 540-41 (Va. 2010) (dismissing a fraudulent inducement claim alleging, solely, that defendants never had an intent to perform or subsequently decided not to perform).

***Second***, DSS alleges, in the alternative, that Pacem "misrepresented the availability of Grenades (with the serial numbers or otherwise)." Compl. ¶ 93. The basis for this allegation is the related allegation that Pacem sent DSS unspecified serial numbers before DSS signed the Agreement, *id.* at ¶¶ 37, 88, and that months later, in April 2024, when DSS inspected grenades, there were fewer than anticipated, *id.* at ¶ 71. This *non sequitur* does not plausibly allege a misrepresentation. DSS must plausibly allege that the serial numbers Pacem sent in December 2023 were false. Merely pointing to the quantity of grenades inspected five months later, in April 2024 – after various developments, including the DSP-6 application – does not plausibly allege a misrepresentation ***in December 2023***.

Indeed, the Complaint contradicts itself. The Complaint alleges that, instead of sending, "the identical type of grenades" to DSS, Compl. ¶ 60, Pacem instead exported "the Grenades" to a different purchaser, *id.* at ¶ 64. By DSS's own allegation, therefore, "the Grenades" were available, and therefore, Pacem did not misrepresent the availability of grenades. The Complaint's contradictory allegations thus defeat the plausibility of the misrepresentation allegation. *See Schmidt v. Synchrony Bank*, No. 22-cv-00344, 2022 WL 18635838, at *1 (E.D. Va. June 14, 2022) ("A complaint containing inconsistent and self-contradictory statements does not state a claim."). Moreover, as DSS well knows, the reason Pacem did not ultimately ship grenades to DSS was

because DSS persisted in its relationship with BBM, clouding the regulatory approval Pacem had previously received after assuring the State Department that BBM was not involved.

*Finally*, DSS further alleges that, ***after the contract was executed***, Pacem induced DSS to further perform on the Agreement by misrepresenting – through provisions in the contract – that grenades were available for delivery. Compl. ¶¶ 39, 40. But fraudulent inducement to contract requires a material misrepresentation ***before*** the formation of the contract. *See Pullen Farm, LLC v. Seedway, LLC*, No. 3:23-cv-00032, 2024 WL 1252374, at *3 (W.D. Va. Mar. 22, 2024) (dismissing fraudulent inducement claim under 9(b) that failed to allege with particularity representations that pre-dated the contract). This allegation is therefore irrelevant, and, in any event, such a fraud claim is barred by Virginia's source of duty and economic loss rule, as explained below.

### C.    DSS's fraud claim is also barred by Virginia's source of duty rule and the economic loss rule.

DSS's fraud claim is, in essence, that the Agreement's terms induced DSS to enter the Agreement and that Pacem failed to abide by those contract terms. Compl. ¶¶ 35, 37, 87. The fraud claim therefore fails for the additional reason that it is barred by Virginia's source of duty rule and its corollary, the economic loss rule. Both rules apply here, where DSS is "attempting to dress up a contract claim in fraud suit of clothes." *Bo*, 2023 WL 5615994, at *6.

The purpose of the source of duty rule is "to counter the modern trend of lawyers adding a tort claim to every breach of contract claim to enhance potential damages." *ITility, LLC v. Staffing Res. Grp., Inc.*, No. 1:20-cv-00477, 2020 WL 6701361, at *3 (E.D. Va. Nov. 13, 2020). The rule provides that "the sole and exclusive remedy for a claim based on the performance of the contractual duty is in contract." *Id.* Accordingly, "in order to recover in tort, the duty tortiously or

negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Bo*, 2023 WL 5615994, at *6 (citation omitted).[5]

The economic loss rule is closely related, but focuses on the relief sought, not the source of the alleged duty breached, and bars tort claims that seek economic damages, which are the province of contract law, not tort law. *See Selective Ins. Co. of the Southeast. v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 414 (E.D. Va. 2020). "[W]hen a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004); *see also Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988) (holding "the law of contracts provides the sole remedy" for "purely economic loss" and finding tort claims barred). Accordingly, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak*, 594 S.E.2d at 618. "The purpose of the rule is to prevent a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort." *4D-Enterprises*, 2020 WL 13200492, at *2 (cleaned up).

Courts often apply both doctrines together. *See Landfall Tr. LLC v. Fid. Nat'l Title Ins. Co.*, 647 F. Supp. 3d 464, 473-75 (E.D. Va. 2022); *Selective Insurance*, 458 F. Supp. 3d at 414-17 (E.D. Va. 2020). *Landfall Trust* discusses the similarity of both rules and holds that both rules bar a

---

[5] *See also MCR Fed., LLC v. JB&A, Inc.*, S.E.2d 186, 194 (Va. 2017) (holding that the source of duty rule bars a fraud claim based on a representation made in a contract); *Dunn Const. Co. v. Cloney*, 682 S.E.2d 943, 947 (Va. 2009) (barring tort claim "related to a duty that arose under the contract"); *Richmond Metro. Auth. v. McDevitt St. Bovis*, 507 S.E.2d 344, 347 (Va. 1998) (affirming dismissal of fraud claim where tort claims "related to a duty or obligation that was specifically required by the [contract]").

negligence claim arising from a "failure to properly perform title searches on and produce accurate descriptions of [a] property" because the duty to properly perform the search arose from a contract and because the plaintiff incurred only economic loss. 647 F. Supp. 3d at 473-475. *Selective Insurance* also describes the rules as relating to one another and dismissed a negligence claim against an insurer where the duties allegedly breached arose from the contract and where the plaintiff allegedly suffered only economic losses. 458 F. Supp. 3d at 414-17.

A straightforward application of these bedrock rules bars DSS's fraud claim. DSS alleges that Pacem committed fraud by misrepresenting – in the contract – the availability of grenades. Compl. ¶¶ 35, 37, 87. And the source of Pacem's obligations to manufacture and deliver those grenades is the Agreement. Indeed, DSS alleges that Pacem breached its duty of "failing to deliver all of the grenades to DSS." *Id.* ¶ 111. Because Pacem's representations and its duty to make and deliver the grenades all reside in the Agreement, DSS's fraud claim is, in reality, a breach of contract claim. The source of duty rule bars a tort version of that claim. Similarly, because the damages DSS seeks are economic losses that flow from Pacem's alleged breach of the contract, the economic loss rule bars DSS's fraud claim seeking the same contract-based economic damages.

To be sure, Virginia law also provides that a fraudulent inducement claim can, in certain circumstances, provide an exception to both rules. "This exception to the economic loss rule, however, only applies when the alleged fraud is committed through misrepresentations concerning present or pre-existing facts, and not on misrepresentations predicated on unfulfilled promises or statements as to future events." *4-D Enterprises*, 2020 WL 13200492, at *3 (citation and internal quotation marks omitted).

The exception therefore ***does not apply*** where the alleged fraudulent inducement arises from representations Pacem made in the Agreement. For example, *4D-Enterprises* held that the

economic loss rule barred a fraudulent inducement claim where the alleged inducement arose from promises made in the contract. 2020 WL 13200492, at *3. Similarly, *Bo* held that the economic loss rule barred a fraud claim where plaintiff asserted that "the promise of two times the principal interest rate … induced the contract." 2023 WL 5615994, at *6. Those promises, *Bo* ruled, "are obligations that Defendants had by virtue of contract and are therefore barred by the economic loss rule." *Id.*

So too here. DSS alleges that Pacem fraudulently induced DSS to enter into the Agreement by making representations ***in the Agreement*** about the availability of grenades. Compl. ¶¶ 35, 37, 87. DSS's alleged inducement therefore arises from Pacem's contractual obligation to deliver grenades. And Pacem's obligation to perform on those representations is, again, in the contract. Accordingly, any alleged breach, together with DSS's alleged harm, stems entirely from the DSS Agreement. The fraud claim is therefore barred.[6]

DSS's fraud claim should be dismissed with prejudice. Although leave to amend should be freely granted "when justice so requires," that leave may be denied where amendment would be futile. *See Bo*, 2023 WL 5615994, at *7. "Here, the fundamental deficiencies of the Complaint, including Plaintiff's failure to allege simple facts … are such that it is appropriate to dismiss Plaintiff's fraud claims with prejudice." *Id.* Moreover, where the source of duty rule and economic loss rule *also* bar the fraud claim, dismissal with prejudice is all the more appropriate. *See id.*;

---

[6] Also barred is any re-imagined fraud claim where DSS alleges that Pacem induced DSS to continue to perform. In *Richmond Metro. Auth. v. McDevitt St. Bovis*, 507 S.E.2d 344 (Va. 1998), a contractor submitted documentation to support an application for progress payments falsely stating that the company had complied with the contract. *Id.* at 345. The court held that a fraud claim was barred because "the source of any duty breached … is solely from the … [c]ontract between the parties." *Id.* at 347. *See also Dunn Const. Co. v. Cloney*, 682 S.E.2d 943, 947 (Va. 2009) (barring a fraud claim based on a contractor's false representation that he made adequate repairs to comply with the contract).

*Landfall Trust*, 647 F. Supp. 3d at 475 (dismissing with prejudice fraud claim barred by the economic loss rule).

## II.     DSS Fails To Plausibly Allege A Claim For An Accounting (Count 3).

DSS's tacked-on claim for an equitable accounting fails for the straightforward reason that DSS has not plausibly alleged a fiduciary or partnership relationship between Pacem and DSS. "Under Virginia law, an accounting is a form of equitable relief which is available upon order of a court in equity providing for an accounting of funds among those with a partnership or other fiduciary relation inter se." *Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*, 698 F. Supp. 2d 602, 623 (E.D. Va. 2010). Although DSS pleads the legal conclusion that Pacem had a "fiduciary duty" regarding the money received under the contract, Compl. ¶ 70, the Complaint does not contain any factual allegations to support this legal conclusion. Legal conclusions are not accepted as true, even at the motion-to-dismiss stage. *See Iqbal*, 556 U.S. at 678.

Instead, DSS has alleged that Pacem is a contractual counterparty who has breached a contract. A fiduciary relationship cannot arise "solely by virtue of [a] contract." *4D-Enterprises, LLC v. Aalto Hyperbaric Oxygen, Inc.*, No. 1:19-cv-01504, 2020 WL 13200228, at *4 (E.D. Va. July 10, 2020) (quoting *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007)). "[W]here there is a 'typical business relationship' evinced by a contract, the court may not create a fiduciary relationship without other evidence that the parties 'intended to create a fiduciary relationship'." *Id.* (quoting *Vicente v. Obenauer*, 736 F. Supp. 679, 695 (E.D. Va. 1990)). There are no such factual allegations here that the parties intended to create a fiduciary relationship. DSS's claim for accounting therefore fails, and because DSS cannot transform this "typical business relationship" into a fiduciary one, the claim should be dismissed with prejudice.

### III.    DSS Fails To Plausibly Allege Tortious Interference (Count 4).

DSS's thinly pleaded tortious interference claim should also be dismissed with prejudice. As an initial matter, the claim's factual contours are difficult to discern. DSS alleges within its tortious interference count that Pacem "improperly contacted DSS's customer," Compl. ¶ 111, and unnecessarily filed a government form, a DSP-6, *id.* at ¶ 112.[7] But these allegations are wholly irrelevant to the tortious inference claim DSS attempts to plead. According to DSS, "Pacem's failure to deliver Grenades ***results in*** DSS being unable to perform under its contract with its Ukrainian customer and interference with its future business relationship." *Id.* at ¶ 113 (emphasis added). DSS alleges that, because Pacem did not perform, DSS was unable to perform, and as a result, DSS's Ukrainian customer has sought remedies from DSS. *Id.* at ¶¶ 81, 82. Accordingly, DSS's allegations of improper conduct and filing a government form play no role in this claim. Instead, DSS appears to allege that Pacem's failure to deliver grenades under the Agreement is both tortious interference with the DSS-Ukrinmash contract and tortious interference with an unidentified business expectancy. It is neither.

***First***, the tortious interference with contract claim. Under Virginia common law, the elements are: "(1) the existence of a valid contractual relationship ...; (2) knowledge of the relationship ... on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship ...; and (4) resultant damage to the party whose relationship ... has been disrupted." *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001) (quoting *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)).

---

[7] The Complaint pleads that Ukrinmash is DSS's Ukrainian customer. Compl. ¶ 2. In any event, the actual facts, which DSS well knows, are far different. The Ukrainian Embassy staff – likely laboring under a misimpression formed from not receiving the full story – made disparaging comments about Pacem to a U.S. non-governmental organization, which the NGO then relayed to Pacem. Pacem responded to the Ukrainian Embassy staff to provide the full story and explain the regulatory complexity affecting the shipments. Pacem did not affirmatively contact Ukrinmash.

DSS's claim suffers from two independent, critical flaws. DSS fails to allege that Pacem interfered in any way with its contract with the Ukrainian customer. As an initial matter, the "improper contact" it alleges is entirely unrelated to the operative allegations that Pacem's alleged breach caused DSS's harm. In any event, the allegation of "improper contact," Compl. ¶ 111, is a legal conclusion that is not assumed to be true. *See Iqbal*, 556 U.S. at 678. Without any factual enhancement about Pacem's alleged intentional interference the mere recitation of the label "improper contact" cannot plausibly allege the element of intentional interference.

Additionally, DSS fails to allege that its Ukrainian customer breached their agreement. Tortious interference is an intentional interference "by inducing or otherwise causing the third person not to perform the contract." *Chaves*, 335 S.E.2d at 102. Here, the Ukrainian customer is the "third person." But DSS alleges that Pacem induced DSS – not the Ukrainian customer – to fail to perform on the agreement. In other words, DSS alleges that *it* has breached its agreement with the Ukrainian customer and that the Ukrainian customer seeks to *enforce the agreement*. Compl. ¶ 83. "[DSS] misunderstands this rule …. Even if true, these facts do not demonstrate tortious interference because [Pacem] has not induced non-performance by a third party." *See Precision Franchising LLC v. Pate*, No. 1:07-cv-00407, 2007 WL 3231551, at *6 (E.D. Va. Oct. 31, 2007) (dismissing a tortious interference claim where the plaintiff alleged that it breach the contract). The Ukrainian customer's efforts to *enforce* the contract against DSS cannot support a claim against Pacem for tortious interference with contract.

***Second***, the claim for tortious interference with a business expectancy. In that context, DSS must also plausibly allege that Pacem employed "improper methods." *Commerce Funding Corp.*, 249 F.3d at 213-14 (citing *Maximus, Inc. v. Lockheed Info. Sys., Inc.*, 493 S.E.2d 375, 378-79 (Va. 1997)). Examples identified by the Virginia Supreme Court include: "illegal or independently

tortious [conduct], such as violations of statutes, regulations, or recognized common-law rules," "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of insider or confidential information, or breach of a fiduciary relationship," violations of "an established standard of a trade or profession, unethical conduct, sharp dealing, overreaching, or unfair competition...." *Id.* at 213-14 (quoting *Duggin v. Adams*, 360 S.E.2d 832, 836-37 (Va. 1987)).

Again, this claim suffers from two independent, critical problems. DSS has not alleged that Pacem employed any "improper methods." Because the bare-bones allegation of "improper contact," is insufficient to allege "intentional interference" with a contract, it is also insufficient to meet the higher pleading standard required to allege tortious interference with a business expectancy. *See Sheffer*, 2019 WL 5295531 at *5(dismissing tortious interference with expectation claim based on conclusory allegation of "improper and illegal means").

DSS also has not alleged the expectancy at issue. DSS merely asserts an "expected future relationship" with its Ukrainian customer. Comp.¶ 112. Again, this is a bare recitation of the elements, not entitled to a presumption of truth. DSS provides no *factual* allegation of what the "expected future relationship" is. "Failure to allege any specific, existing economic interest is fatal to the claim [of tortious interference with a business expectancy]." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003). DSS has not even alleged that its Ukrainian customer, or any other potential customer, has told DSS that it is not giving future business to DSS – let alone linked that loss of business to any tortious conduct by Pacem. *See Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 617 (E.D. Va. 2009) (dismissing tortious interference with expectancy claim where plaintiff alleged far more than here: a reduction of a specific percentage of workforce employed by a specific client).

*Finally*, what is really going on here is that DSS is trying to recover damages to which it is not entitled under the Agreement. What DSS really alleges is that it has suffered harm as a consequence of Pacem's alleged breach of contract. That appears to be an impermissible claim for consequential damages resulting from a breach of contract claim. *See generally Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1084-85 (E.D. Va. 2011) (holding consequential damages barred by contract). The contract expressly bars consequential damages. Compl., Ex. 1 § 11(a). Hence, DSS's tortious interference count is an effort to shoehorn its factual allegations into an invalid tortious interference claim. That claim fails and, because no amount of artful pleading can transform this this breach of contract claim into a tortious interference claim, Count 4 should also be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Pacem respectfully requests that the Court dismiss Counts 1, 3, and 4 of the Complaint with prejudice.


Dated: September 5, 2024                           Respectfully submitted,

                                                   By: */s/ Phillip J. O'Beirne*
                                                   Philip J. O'Beirne (Virginia Bar No. 71956)
                                                   **STEIN MITCHELL BEATO &**
                                                   **MISSNER LLP**
                                                   2000 K. Street NW, Suite 600
                                                   Washington, DC 20006
                                                   (202) 737-7777
                                                   POBeirne@stienmitchell.com

                                                   *Counsel for Pacem Defense LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to all CM/ECF participants, including counsel for Plaintiff.


*/s/ Philip J. O'Beirne*
Philip J. O'Beirne